IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

CHRISTOPHER TOBBIE, :
:
Petitioner, :
:
VS. : 7: 10-CV-90084 (HL)
: 28 U.S.C. § 2255
: 7: 06-CR-17 (HL)
UNITED STATES OF AMERICA, :
:
Respondent. :
:

**RECOMMENDATION**

Petitioner's Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255, filed on July 1, 2010, is before this Court for the issuance of a recommendation of disposition pursuant to Rule 8 of the Rules Governing Section 2255 Proceedings for the United States District Courts.

**Procedural History**

The Petitioner was indicted in this Court on September 28, 2006, on a charge of possession with intent to distribute cocaine. (Doc. 1). Petitioner was represented by court-appointed counsel, Oliver Register. On March 12, 2008, Petitioner entered into a Plea Agreement with the Government and pled guilty to Count One of the indictment, possession with intent to distribute cocaine base. (Docs. 27, 28). Petitioner was sentenced to a term of imprisonment of 200 months on August 7, 2008. (Docs. 33, 35). Petitioner filed a Notice of Appeal on August 12, 2008, resulting in the Eleventh Circuit affirming Petitioner's conviction and sentence, and granting counsel's *Anders* motion on April 10, 2009, based on a finding that "independent examination of

the entire record reveals no arguable issues of merit". (Docs. 37, 49).

**Petitioner's § 2255 Claims**

In his § 2255 motion, Petitioner alleges (1) that trial counsel rendered ineffective assistance of counsel by failing to challenge, in a motion to suppress, a violation of Petitioner's Fourth Amendment rights, and (2) that his guilty plea was coerced by trial counsel, because his trial counsel withdrew the motion to suppress and advised Petitioner that he had no Fourth Amendment claim. (Docs. 54, 56).

The Court appointed counsel to represent Petitioner on the § 2255 motion and held an evidentiary hearing on the motion on August 14, 2012. (Docs. 78, 86). Following the preparation of a transcript of the evidentiary hearing proceedings, both parties have filed briefs in support of their positions. (Docs. 90, 92, 93).

**Discussion**

Section 2255 provides that:

> a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. If a prisoner's 2255 claim is found to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.*

In order to establish that his counsel's representation was constitutionally defective, the

2

Petitioner must show (1) that his counsel's representation was deficient, and (2) that the Petitioner was prejudiced by his counsel's alleged deficient performance. *Strickland v. Washington*, 466 U.S. 668 (1984); *Smith v. Wainwright*, 777 F.2d 609, 615 (11th Cir. 1985).

"Our role in collaterally reviewing [] judicial proceedings is not to point out counsel's errors, but only to determine whether counsel's performance in a given proceeding was so beneath prevailing professional norms that the attorney was not performing as 'counsel' guaranteed by the sixth amendment." *Bertolotti v. Dugger*, 883 F.2d 1503, 1510 (11th Cir. 1989). The two-prong *Strickland* test applies to guilty plea challenges, although "[i]n the context of a guilty plea, the first prong of *Strickland* requires petitioner to show his plea was not voluntary because he received advice from counsel that was not within the range of competence demanded of attorneys in criminal cases, while the second prong requires petitioner to show a reasonable probability that, but for counsel's errors, he would have entered a different plea." *Woolsey v. United States*, 2011 WL 195412, *2 (M.D.Fla., Jan. 20, 2011) (citing *Hill v. Lockhart*, 474 U.S. 52, 56-59 (1985)). Thus, the prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59.

The *Strickland* court stated that "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of

3

lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

"As to counsel's performance, 'the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices.'" *Reed v. Sec'y. Fla. Dep't. of Corr.*, 593 F.3d 1217, 1240 (11th Cir. 2010) (quoting *Bobby v.Van Hook*, 130 S.Ct. 13, 17 (2009)). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). In order to find that counsel's performance was objectively unreasonable, the performance must be such that no competent counsel would have taken the action at issue. *Hall v. Thomas*, 611 F.3d 1259, 1290 (11th Cir. 2010).

As observed by the Eleventh Circuit, the standard for ineffective assistance of counsel

> has nothing to do with what the best lawyers would have done. Nor is it the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992).

*Motion to Suppress*

Petitioner first contends that his counsel was ineffective for failing to litigate a meritorious Fourth Amendment claim resulting from an unlawful search after a traffic stop, and thus was ineffective. (Doc. 90). "To obtain relief where an ineffective assistance claim is based on trial counsel's failure to file a timely motion to suppress, a petitioner must prove (1) that counsel's

4

representation fell below an objective standard of reasonableness, (2) that the Fourth Amendment claim is meritorious, and (3) that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Zakrzewski v. McDonough*, 455 F.3d 1254, 1260 (11th Cir. 2006); *see also Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

"Searches conducted by means of consent are valid so long as the consent is voluntary." *U.S. v. Kapperman*, 764 F.2d 786, 793 (11th Cir. 1985). "In conducting a search pursuant to a properly obtained, voluntary consent, however, the extent of the search must be confined to the terms of its authorization." *U.S. v. Blake*, 888 F.2d 795, 798 (11th Cir. 1989). "Whether a suspect voluntarily gave consent to a search is a question of fact to be determined by the totality of the circumstances." *Id*.

At the Evidentiary Hearing, Petitioner's trial counsel, Mr. Oliver Register, testified that he obtained the video of the traffic stop and subsequent search of Petitioner; he reviewed it himself, and reviewed the video with Petitioner. (Doc. 89, Evid. Hr'g, p. 85, ll. 4-9). Mr. Register stated that, in his opinion, the video showed a legal search of Petitioner, and that Petitioner consented to the search. (*Id.* at p. 83, ll. 21-24, p. 87, ll. 8-11).

The video shows that, as Petitioner stepped out of the vehicle, Lt. Hightower asked Petitioner if he had "guns, marijuana, or anything" on him. (Video at 10:17). Petitioner responded, "no, no, no". (*Id.* at 10:19). Lt. Hightower then asked Petitioner if Lt. Hightower could search Petitioner. (*Id.* at 10:20). Petitioner's response is unclear, but Lt. Hightower responds, stating "Alright". (*Id.* at 10:22). Petitioner began patting his front area, and Lt. Hightower lifted Petitioner's shirt and appeared to pat Petitioner's belt area. (*Id.* at 10:22 – 10:

5

24). Petitioner then appeared to step back, and after Petitioner was restrained and the officers were checking his pants, Petitioner told the officers to "hold up" and backed away. (*Id.* at 10:24 – 10:44).

While Petitioner's verbal consent to the search cannot be heard, a reasonable attorney could determine that Petitioner voluntarily consented to the search, especially in light of the totality of the evidence. During the traffic stop, while Petitioner's answer cannot be heard regarding the request to search his body, Lt. Hightower responded affirmatively to Petitioner's answer, and began to search Petitioner. The report following the traffic stop states that Petitioner agreed to be searched, and Lt. Hightower testified at the Evidentiary Hearing that he believed Petitioner consented to being searched. (Doc. 89, Evid. Hr'g, p. 87, ll. 8-13); (Doc. 90-1, p. 2) (Lt. Hightower "removed [Petitioner from the car] and asked [Petitioner] if [he] could pat and search him for drugs and weapons. [Petitioner] stated yes"). Accordingly, the Court finds that Mr. Register's interpretation that Petitioner consented to the search was objectively reasonable, and did not fall below professional standards.

Additionally, Mr. Register testified at the Evidentiary Hearing that, after speaking with the Assistant United States Attorney assigned to the case, it was Mr. Register's understanding that Petitioner could not pursue a motion to suppress and still receive a one point reduction at sentencing for providing a timely notice of intent to plea. (Doc. 89, Evid. Hr'g, p. 83, ll. 3-10).

At the Evidentiary Hearing, Mr. Register testified to the following:

> But I believe that during my conversation with Mr. Dennard about the recommencement of the motion to suppress hearing, I believe I asked him whether or not that would cause Mr. Tobbie –if the hearing –if Mr. Tobbie was unsuccessful in the hearing, whether or

6

> not that would cause him to lose that point for a timely notification of an intent to plea. And I came away with the impression that he couldn't have the hearing and get the point too.

(*Id.* at p. 83, ll. 3-10). Mr. Register also testified as to his advice to Petitioner regarding the success of a motion to suppress, and the risks and benefits of pursuing the motion.

> [Mr. Register:] With regard to strategy, I thought the video was pretty self explanatory. I also felt that Mr. Tobbie had a right to a motion to suppress hearing if he desired one. So I was going to go with what I had.
> [Ms. Williams:] Okay. And when you say you thought that the video was pretty self explanatory, could you –what was your interpretation of it?
> [Mr. Register:] Okay. My interpretation was that it was a legal search. (*Id.* at p. 83, ll. 17-24).
>
> . . .
>
> [AUSA:] When you met with Mr. Tobbie, you talked about the risks and the benefit of his proceeding with the motion, right?
> [Mr. Register:] That's correct.
> [AUSA:] And you explained to him that there was some chance of success, or did you say there was no chance of success?
> [Mr. Register:] I told him that in my opinion it was a legal search.
> [AUSA:] Did you explain to him that it's possible he could be successful if he went forward?
> [Mr. Register:] I explained to him that in my opinion it was a legal search and that he had the right to go forward on the motion to suppress if he desired.
> [AUSA:] So you didn't make the decision for Mr. Tobbie; you explained to him the risks and you gave him your evaluation of his probability of success?
> [Mr. Register:] That's correct.
> [AUSA:] And did you explain to Mr. Tobbie that he might –what benefits he might receive from withdrawing the motion and pleading guilty?
> [Mr. Register:] I did.
> [AUSA:] Did you attempt to establish his sentencing guideline range?
> [Mr. Register]: I did.
> [AUSA:] Do you remember what the difference of the one point in

> the government's discretion would have made for Mr. Tobbie?
> [Mr. Register:] I believe approximately three years.
> [AUSA:] So you explained to Mr. Tobbie he can go forward on a motion with a very little probability of success, if any, and if he chooses to do that he risks three years additional in prison?
> [Mr. Register:] That's correct.
> [AUSA:] The government also agreed to drop one of the counts in this case if Mr. Tobbie pled guilty, right?
> [Mr. Register:] That's correct.
> [AUSA:] Did you explain that to Mr. Tobbie?
> [Mr. Register:] I did.

(*Id.* at p. 85, l. 23 – p. 87, l. 6).

Herein, Mr. Register testified that it benefited Petitioner to timely withdraw the motion to suppress, and plead guilty to the negotiated plea agreement. Withdrawing the motion to suppress and pleading guilty resulted in Petitioner receiving all three acceptance of responsibility sentence reduction points. (*See* Docs. 32; 45, Sentencing Hr'g, p. 4, ll. 11-12). One count of the indictment was also dismissed as a result of Mr. Tobbie entering a plea agreement. (Doc. 89, Evid. Hr'g, p. 87, ll. 2-4; *see also* Docket entry at 33).

The advice and subsequent decision to withdraw the motion to suppress and proceed with a negotiated plea fell within the wide range of acceptable professional conduct. Mr. Register's interpretation of the traffic stop, that Petitioner consented to the search, was not objectively unreasonable. Furthermore, because Petitioner timely withdrew the motion to suppress, he received all three sentence reduction points, and one count of the indictment was dismissed. The Court finds that Petitioner has failed to show his trial counsel's "representation fell below an objective standard of reasonableness". *See Stinson v. U.S.*, 2011 WL 5292463, *5 (M.D. Ala., Oct. 12, 2011) (finding counsel was not ineffective when he chose not to file a motion to suppress because, in his opinion, the motion had little chance of success and the likelihood of a downward

departure was better when defendants did not pursue motions to suppress); *Philipe v. U.S.*, 2011 WL 1990492, *11 (S.D. Fla., May 11, 2011) (finding counsel was not ineffective when counsel investigated and researched a possible motion to suppress based on the lawfulness of a search and seizure, and concluded that such motion lacked merit); *Branham v. Secretary, Fla. Dep't. of Corrections*, 2008 WL 344510, * 9 (M.D. Fla., Feb. 7, 2008) (finding counsel was not ineffective when he decided not to pursue a motion to suppress where a plea negotiation would have been withdrawn had counsel pursued the motion, and the defendant made an informed decision to pled guilty); *U.S. v. Rosario-Puente*, 41 Fed. Appx. 483, 484 (1st Cir. 2002) (finding the petitioner failed to show the motion to suppress was likely to succeed, and stating that in light of the reduced sentence the petitioner received, "no doubt in part to his agreement to withdraw the motion to suppress and plead guilty, trial counsel's advice seem[ed] eminently reasonable").

As Petitioner has not shown that his trial counsel's performance fell below an objective standard of reasonableness, Petitioner has failed to establish that his counsel was ineffective for failing to litigate a Fourth Amendment claim.

*Guilty Plea Claims*

In Petitioner's Memorandum filed in support of his § 2255 Petition, Petitioner asserts that his guilty plea was coerced by his trial counsel when his counsel "withdrew the motion to suppress and advised [Petitioner] that he [ ] had no Fourth Amendment claim."  (Doc. 56, p. 16). In Petitioner's Brief on the Merits, filed after the Evidentiary Hearing, Petitioner's habeas counsel additionally asserts that trial counsel was ineffective for failing to adequately explain the terms and consequences of the plea agreement.  (Doc. 90, p. 20).

9

*Time-Barred Claim*

In his post-hearing brief, and for the first time, Petitioner is asserting that trial counsel was ineffective for failing to adequately explain the terms and consequences of the plea agreement. Petitioner has not obtained leave from the Court to amend his Petition. Petitioner has merely asserted this claim in his post-hearing brief. In order to amend his Petition, Petitioner must have leave of the Court. *See* Fed. R. Civ. P. 15(a)(2). In an April 6, 2012 Order, the Court allowed Petitioner to file a motion to amend no later than April 27, 2012, if Petitioner wished to attempt to expand or narrow his claims. (Doc. 78). Neither Petitioner nor his counsel attempted to amend his Petition within the time provided.

In his original Petition, Petitioner alleged that counsel was ineffective for failing to litigate his Fourth Amendment claim, and Petitioner was coerced into pleading guilty because of his counsel's failure to file a motion to suppress. (Docs. 54, 56). Petitioner did not allege that counsel was ineffective for failing to explain the plea agreement. Therefore, the newly asserted claim does not relate back to the original Petition. *See Espinosa v. U.S.*, 330 Fed. Appx. 889, 892 (11th Cir. 2009) (newly raised claims of ineffective assistance of counsel relating to pre-trial conduct did not relate back to the original claims of ineffective assistance of counsel which were based on counsel's performance during specific moments of the trial and sentencing proceedings); *Davenport v. U.S.*, 217 F.3d 1341, 1346 (11th Cir. 2000) (holding the petitioner's newly asserted claims of ineffective assistance of counsel did not relate back to the original petition when the original petition did not mention the activity alleged in the new ineffective assistance of counsel claims). Furthermore, Petitioner was aware of this claim at the time of the filing of the original Petition, and yet he has failed to provide an explanation as to the failure to allege this claim until

more than two years after the Petition was filed.

As Petitioner has not obtained leave of Court to amend his Petition and the new claim does not relate back, the claim that trial counsel was ineffective for failing to adequately explain the plea agreement referenced in his post-hearing brief cannot be considered.

*Guilty Plea*

In regard to a guilty plea, the Constitution requires "that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences.'" *U.S. v. Ruiz*, 536 U.S. 622, 629 (2022) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)). A court accepting a guilty plea must ensure that a defendant "enters his guilty plea free from coercion, understands the nature of the charges, and understands the consequences of his plea." *U.S. v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005) (internal enumeration omitted). The Supreme Court has determined that "the representations of the defendant [at a plea proceeding] as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

Petitioner appeared before the Honorable Hugh Lawson, U.S. District Judge, on March 12, 2008 to enter a guilty plea to the charge of Possession with Intent to Distribute More than 5 Grams of Cocaine Base. (Doc. 44). The Court placed Petitioner under oath and proceeded to inform Petitioner as to the charge to which Petitioner was pleading guilty, the maximum term of imprisonment and maximum possible fine associated with this charge, as follows:

> THE COURT: (After setting out the charge) Do you understand

>           that charge?
>           THE DEFENDANT:  Yes, sir.
>           THE COURT:  This charge is a felony and carries a range of penalty of what?
>           MR. DENNARD:  Your Honor, it carries a range of a minimum of five years up to a maximum of forty years imprisonment, a maximum fine of $2 million dollars or both, a term of supervised release of four years, and the $100 mandatory assessment fee.
>           THE COURT:  Mr. Tobbie, do you understand the range of sentence that is applicable to Count One in this matter?
>           THE DEFENDANT:  Yes, sir.

(*Id.* at p. 3, ll. 9-19). Petitioner stated that he understood both the charge and the possible penalty therefore. (*Id.*).

The Court then asked Petitioner and his counsel a series of questions regarding counsel's representation and whether Petitioner and counsel had discussed Petitioner's constitutional rights, the charges, possible penalties, and defenses. (*Id.* at pp. 3-7). Petitioner responded that he understood the range of penalty applicable to the case and that his counsel, Mr. Register, had discussed the facts, range of penalty and possible defenses with Petitioner. (*Id.* at pp. 3-4).

>           THE COURT:  You are represented by Attorney Oliver Register; are you not?
>           THE DEFENDANT:  Yes, sir.
>           THE COURT:  Have you had sufficient time to talk with Mr. Register and to consult with him about the case?
>           THE DEFENDANT:  Yes, sir.
>           THE COURT:  Has Mr. Register done for you as your lawyer everything you want him to do?
>           THE DEFENDANT:  Yes, sir.
>           THE COURT:  Are you satisfied with his services?
>           THE DEFENDANT:  Yes, sir.

(*Id.* at p. 3, l. 20 – p. 4, l. 5).

Petitioner was informed as to his rights to a jury trial and was questioned regarding his understanding of the plea process in general. (*Id.* at pp. 5-7). Petitioner stated that he was

pleading guilty freely and voluntarily, with no one having threatened or attempted to force him to plead guilty. (*Id.* at p. 7, ll. 10-15).

The Government read the Stipulation of Fact in Petitioner's Plea Agreement, and Petitioner affirmed that he understood the stipulation, agreed with the stipulation and admitted that it was true, truly describing what took place and his conduct in this case. (*Id.* at p. 9, l. 23 – p. 12, l. 2). Both Petitioner and Mr. Register affirmed for the Court that the Plea Agreement was in fact the agreement reviewed by Petitioner and counsel, that portions Petitioner could not read had been read to him by counsel, that Petitioner had signed the agreement, and that Petitioner had initialed each page of the agreement. (*Id.* at p. 12-13). The Court ultimately accepted Petitioner's guilty plea, finding that there was a factual basis for the guilty plea, that Petitioner was guilty, and that the plea was freely and voluntarily entered. (*Id.* at p. 17, ll. 14 – 16).

On August 14, 2012, at the Evidentiary Hearing, Petitioner testified that Mr. Register told Petitioner not to disagree with anything during the change of plea hearing. (Doc. 89, Evid. Hr'g, p. 16). Petitioner testified that he told Judge Lawson his plea was not coerced and that he was entering the plea freely and voluntarily because Mr. Register told Petitioner that he would be facing twenty-five (25) years if he disagreed with Judge Lawson. (*Id.*). When asked if Petitioner was not telling the truth when he answered Judge Lawson's questions at the change of plea hearing, Petitioner responded that he "was basically doing what [his] lawyer told [him] to do." (*Id.* at p. 29, ll. 16-17). Petitioner also testified that he decided to enter the plea because he would be facing a lot of time, and that Mr. Register advised him that if he entered the plea he could receive a three point sentence reduction due to his timely acceptance of responsibility. (*Id.*

13

at p. 15, l. 24 – p. 16, l. 1).

Mr. Register testified at the Evidentiary Hearing that when he met with Petitioner he read the plea agreement to Petitioner. (*Id*. at p. 80, l. 24 – p. 81, l. 1). Mr. Register also testified to the following regarding the motion to suppress and the plea agreement:

> [Mr. Register:] I explained to [Petitioner] that in my opinion it was a legal search and that he had the right to go forward on the motion to suppress if he desired.
> [AUSA:] So you didn't make the decision for Mr. Tobbie; you explained to him the risks and you gave him your evaluation of his probability of success?
> [Mr. Register:] That's correct.

(*Id.* at p. 86, ll. 6-12). Additionally, when Mr. Register was asked if he coerced Petitioner into changing his mind regarding pursuing the motion to suppress, Mr. Register testified, "No. I give him options. I tell him what his options are, and he makes the decision." (*Id.* at p. 88, ll. 18-20).

In regard to the change of plea hearing, Mr. Register testified to the following:

> [AUSA:] Did you have any concern that Mr. Tobbie was not giving his guilty plea knowingly and voluntarily?
> [Mr. Register:] I did not.
> [AUSA:] And you had read every word of that plea agreement to him?
> [Mr. Register:] Yes.
> [AUSA:] And you had explained to him his rights?
> [Mr. Register:] I had.
> [AUSA:] And you had gone through the Stipulation of Fact that the government had put together with Mr. Tobbie as part of the plea agreement?
> [Mr. Register:] Yes.

(*Id.* at p. 89, ll. 4-14).

The plea colloquy establishes that the Court examined whether Petitioner's plea was knowingly and voluntarily entered. Moreover, the Court verified with Petitioner that his counsel

14

had informed Petitioner of his rights, and reviewed the charges and possible sentence with Petitioner prior to the entry of his guilty plea. The Court also verified with Petitioner's counsel that counsel had informed Petitioner of his rights, defenses, and penalties, and that he discussed the facts of the case with Petitioner. Petitioner's contention that he was coerced into pleading guilty "is belied by the provisions of the plea agreement and Petitioner's statements during the plea colloquy that he voluntarily pled guilty". *Edwards v. United States*, 2011 WL 1357687, *5 (M.D. Fla., April 11, 2011).

Additionally, Petitioner asserts that his plea was coerced because his counsel was ineffective when he advised Petitioner that he did not believe that a motion to suppress would be successful. The Court has found that Petitioner's counsel's performance regarding the motion to suppress was not ineffective. The record reflects that Petitioner, not his counsel, decided to withdraw the motion to suppress. (*See* Doc. 89, Evid. Hr'g, p. 88, ll. 9-20). Counsel provided advice to Petitioner regarding the risks and benefits of withdrawing the motion to suppress, and provided his opinion regarding the validity of the search. (*Id.* at p. 85, l. 23 – p. 87, l. 6). Petitioner's decision to withdraw the motion and plead guilty was based on objectively reasonable advice from counsel. Thus, Petitioner's assertion that his plea was coerced because his counsel was ineffective in failing to litigate a Fourth Amendment claim must fail.

Petitioner's testimony at the evidentiary hearing does not overcome Petitioner's statements at his plea hearing or the testimony of Mr. Register. "The Court strongly presumes that a defendant's statements at the guilty-plea colloquy were truthful, including his admission of guilt and his representation that he understood the consequences of his plea." *Woolsey*, 2011 WL

195412 at *7 (citing *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994)). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74. Petitioner's statements at the change of plea hearing show that Petitioner was not coerced into pleading guilty and that he entered the plea knowingly and voluntarily. Accordingly, Petitioner has failed to establish that counsel coerced him into entering a plea of guilty.

**Conclusion**

Petitioner has failed to show that his attorney's performance was deficient in regard to his failure to litigate the Fourth Amendment claim, and in regard to the claim that Petitioner was coerced into pleading guilty. Thus, it is the recommendation of the undersigned that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to the recommendations contained herein with the Honorable Hugh Lawson, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). Therefore, it is recommended that the Court deny a certificate of appealability in its Final Order. If the Petitioner files an objection to this Recommendation, he may include therein any arguments he wishes to make regarding a certificate of appealability.

**SO RECOMMENDED**, this 29th day of April, 2013.

                                            s/ *THOMAS Q. LANGSTAFF*
                                            UNITED STATES MAGISTRATE JUDGE